IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BILL L. MIDGLEY,

        Plaintiff,

vs.                                                                    No. CIV 03-1374 JB/LCS

RAYROCK MINES, INC.,
GLAMIS GOLD, INC., AETNA
FINANCIAL SERVICES, A DIVISION
OF AETNA LIFE INSURANCE
AND ANNUITY COMPANY,

        Defendants.

## MEMORANDUM OPINION

**THIS MATTER** came before the Court on Defendant ING's Motion to Dismiss, filed March

25, 2004 (Doc. 10).[1] The primary issues were whether Plaintiff Bill L. Midgley had actual knowledge

of the alleged breach of fiduciary duty within three years of filing his Complaint and whether he has

met the pleading standards for fraud to bring his claim within the six year statute of limitations for

"fraud or concealment."  Because the undisputed allegations and documents show that Midgley had

actual knowledge almost four years before he filed his Complaint, the Court found that Midgley's

claim does not fall within the three year statute of limitations.  However, because the Court found that

Midgley's Complaint does not meet the pleading requirements for fraud or fraudulent concealment,

the Court cannot determine at this time whether the claims fall within the six-year limitation period.

---

[1] The court held a hearing on this motion on November 5, 2004, and at that time gave an oral ruling.  On November 17, 2004, the Court entered an order reflecting that oral ruling.  See Order, filed November 17, 2004 (Doc. 23).  This memorandum is consistent with the Court's earlier ruling and is provided to set forth more fully the Court's reasoning.

The Court therefore has granted the motion to dismiss and dismissed Midgley's Complaint without prejudice.   Midgley must, if he wishes to proceed with his case, file an amended complaint by November 29, 2004.[2]

## FACTUAL BACKGROUND

Midgley is a resident of Eddy County, New Mexico, and the Defendant Aetna Financial Services ("Aetna"), a Division of Aetna Life Insurance and Annuity Company, is a corporate fiduciary based in Hartford, Connecticut.  See Complaint ¶ 1, at 1, filed November 3, 2003 (Doc. 1).  Aetna does business in New Mexico.  See id.  ING Life Insurance and Annuity Company ("ING") contends that Midgley incorrectly named Aetna as a party and maintains that ING is the proper party. Defendant Glamis Gold, Inc. is a corporation that conducts business in Nevada and New Mexico, and became successor to the 401k Plan of Rayrock Mines, Inc. ("Rayrock") for Midgley's account.  See id.

Rayrock, a New Mexico corporation, was the parent company of Western Ag-Minerals, Midgley's employer, and established a 401k Plan, Account #777125, for the benefit of Midgley and other employees during Midgley's employment.   See id. ¶ 3, at 2.  While a Rayrock employee, Midgley became fully vested in 401k Plan #777125, administered by Aetna since July 1, 1990.  See

_____

[2] In the November 17, 2004 Order, the Court stated:
The Plaintiff shall file an amended complaint by Moday, November 29, 2004. In any amended complaint, the Plaintiff must state expressly whether he is relying upon fraud in the underlying events or upon fraudulent concealment, or both, to avoid the statute of limitations. The Plaintiff must plead fraud with particularity and with as much detail as possible.
See Order, filed November 17, 2004 (Doc. 23).
_____

-2-

id.  As stated in the Complaint, "without giving the Plaintiff any advanced notice, the plan administrator and Defendants Rayrock and Glamis Gold, Inc., terminated the plan in July 1999 requiring Midgley to have a new vesting period of 6-years . . . ."  Complaint ¶ 4, at 2.  As part of the plan termination, ING made a deduction against Midgley's 401k account; Aetna identified this deduction as a "market value adjustment."  Complaint ¶ 5, at 2.  Midgley alleges that the Defendants knew he could not now become vested, because Rayrock had sold Western Ag to IMC Global, a different mining company and because Midgley was near retirement age.  See id.

Paragraph 5 of the Complaint states: "As a result of the termination of the 401k plan, without advance notice to the Plaintiff, which acts in furtherance thereof constitute fraud, and breach of contract in the underlying benefit plan, Defendants wrongfully charged the Plaintiff an offset . . . ."  See Complaint ¶ 5, at 2.  Midgley alleges that the Defendants wrongfully applied an early withdrawal penalty of $8,163.64, knowing that Midgley was at retirement age and was fully vested.  Midgley contends that market value adjustments are not authorized for fully vested employees after the age of 59 ½ years.  See id.

Midgley did not have actual or specific knowledge of any violations at the time that they were made.  While it is unclear as to the exact date that Midgley became aware of the contested deduction, it is uncontroverted that, at a minimum,  Midgley was aware of the contested deduction as of November 16, 1999, approximately four years before he filed his complaint.  On that date, Midgley wrote a letter regarding the disputed deduction to Aetna representatives.  See Handwritten Letter from William Midgley to Aetna Retirement Services (dated November 16, 1999).

Midgley asserts in paragraph 6 of his Complaint that he had made "numerous inquiries and demands of the Defendants . . . and had not received a satisfactory explanation."  See Complaint ¶

6, at 2.  He also sought to obtain reimbursement of the offset for a "market value adjustment" of $8,163.64.  See id. ("That the Plaintiff has made numerous inquiries and demands of the Defendant to obtain reimbursement of the offset for market value adjustment of $8,163.64 and has not received a satisfactory explanation . . . .").  The handwritten letter is one such inquiry by Midgley.

## PROCEDURAL BACKGROUND

Midgley is asserting claims against ING for negligent or wrongful administration of employee benefits, breach of fiduciary duties, breach of contract, and fraud pursuant to the Employee Retirement Income Security Act ("ERISA").  These claims arise out of the 1999 plan termination that resulted in the deduction from Midgley's account.

ING moves, pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing the case against it.  ING has moved to dismiss Midgley's Complaint on three grounds: (i) ERISA's three-year statute of limitations bars Midgley's claims for breach of fiduciary duty; (ii) Midgley's claims for fraud are not pled with particularity as rule 9(b) requires; and (iii) Midgley's fraud claim does not otherwise state a claim for which the Court can grant relief under rule 12(b)(6).

## STANDARD FOR REVIEWING A RULE 12(B)(6) MOTION

In assessing whether a complaint sufficiently articulates a claim for which the court may grant relief, the court must accept as true all well-pleaded allegations and view them in the light most favorable to the plaintiff.  If, after the court undertakes this task, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief, then the court must dismiss the action.  See Tonkovich v. Kansas Bd. of Regents, 254 F.3d 941, 943 (10th Cir. 2001).

A court must convert a motion to dismiss into a motion for summary judgment if "matters

outside the pleading are presented to and not excluded by the court" and "all parties . . . [are] given

reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

Fed.R.Civ.P. 12(b). If, however, a document is not incorporated by reference or attached to the

complaint, but is referred to in the complaint and is central to the plaintiff's claim, the defendant may

submit an "indisputably authentic copy to the court to be considered on a motion to dismiss." GFF

Corp. v. Assoc. Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997). See Jacobsen v.

Deseret Book Co., 287 F.3d 936, 941-42 (10th Cir. 2002)(holding that a court may consider

documents to which the complaint refers if the documents are central to the plaintiff's claim and the

parties do not dispute authenticity); 5(A) Charles Alan Wright & Arthur R. Miller, Federal Practice

& Procedure § 1327 (3d ed. 2004) ("[W]hen the plaintiff fails to introduce a pertinent document as

part of her pleading . . . the defendant may introduce the document as an exhibit to a motion attacking

the sufficiency of the pleading.").

## STATUTE OF LIMITATIONS FOR ERISA CLAIMS

Section 1113 of Title 29 provides a statute of limitations for ERISA actions:

No action may be commenced under this title with respect to a fiduciary's breach of
any responsibility, duty, or obligation under this part [29 U.S.C. §§ 1101–1114], or
with respect to a violation of this part [29 U.S.C. §§ 1101–1114], after the earlier of
– (1) six years after (A) the date of the last action which constituted a part of the
breach or violation, or (B) in the case of an omission, the latest date on which the
fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of
the breach or violation; except that in the case of fraud or concealment, such action
may be commenced not later than six years after the date of discovery of such breach
or violation.

29 U.S.C. § 1113. Section 1113(a) prescribes a six-year limitations period that is shortened to three

years if the plaintiff had actual knowledge of the breach or of the violation. The six-year period is

extended to the date of discovery of the breach or violation in the event of fraud or concealment. <u>See</u> <u>Reich v. Lancaster</u>, 55 F.3d 1034, 1055 (5th Cir. 1995).

### 1. Three-Year Statute of Limitations

The statute specifies that the three-year limitation period accrues from the time the plaintiff had actual knowledge of the breach or of the violation, regardless of when the breach actually occurred. <u>See</u> <u>Ziegler v. Connecticut Gen. Life Ins. Co.</u>, 916 F.2d 548, 552 (9th Cir. 1990). Thus, in the case of a non-fraudulent breach of fiduciary duty, the ERISA statute specifies a two-part inquiry: (i) when did the breach occur; and (ii) did the plaintiff have actual knowledge of the breach or violation more than three years prior to the initiation of the action. <u>See</u> <u>Wright v. Heyne</u>, 349 F.3d 321, 327 (6th Cir. 2003); <u>Maher v. Strachan Shipping Co.</u>, 68 F.3d 951, 954 (5th Cir. 1995) (citing <u>Ziegler v. Connecticut Gen. Life Ins.</u>, 916 F.2d at 550).

The United States Court of Appeals for the Ninth Circuit in <u>Ziegler v. Connecticut General Life Ins.</u>, held that, to apply the ERISA limitations period and to determine when actual knowledge occurred, the court must first isolate and define the underlying violation upon which a plaintiff founds his or her claim. <u>See</u> <u>id.</u> at 548 (citing <u>Meagher v. Int'l Ass'n of Machinists and Aerospace Workers Pension Plan</u>, 856 F.2d 1418, 1422 (9th Cir. 1988), <u>cert. denied</u>, 490 U.S. 1039 (1989)). <u>Ziegler v. Connecticut General Life Ins.</u> involved a market value adjustment similar to the adjustment at issue in this case. In that case, Westco, a manufacturer of baking ingredients, sued Connecticut General Life Insurance, a company with which Westco had entered into a contract to invest Westco's pension funds, alleging that Connecticut General's "market value" adjustment resulted in retention of nearly a hundred thousand dollars in Westco pension assets. The Ninth Circuit held that the ERISA breach or violation, if any, occurred upon execution of the 1983 investment agreement containing the

"market value" option.  See Ziegler v. Connecticut Gen. Life Ins., 916 F.2d at 551.

Once the court identifies the underlying breach or violation, it must then determine if and when the plaintiff had actual knowledge of the breach.  See id. at 552.  The United States Court of Appeals for the Tenth Circuit has not defined "actual knowledge" for the purpose of determining when the three year ERISA time limitation accrues.  There is a split on the issue in the circuits that have addressed it.

The Sixth, Seventh, Ninth, and Eleventh Circuits have held that actual knowledge requires only knowledge of all the relevant facts, not that the facts establish a cognizable claim under ERISA.  See Wright v. Heyne, 349 F.3d at 330 (holding that "the relevant knowledge required to trigger the statute of limitations under 29 U.S.C. § 1113(2) is knowledge of the facts or transaction that constituted the alleged violation"); Martin v. Consultants & Administrators, Inc., 966 F.2d 1078, 1086 (7th Cir. 1992) (stating that "it is not necessary for a potential plaintiff to have knowledge of every last detail of a transaction, or knowledge of its illegality" for the actual knowledge requirement to be satisfied); Rush v. Martin Peterson Co., 83 F.3d 894, 896 (7th Cir. 1996) (defining actual knowledge as "knowledge of the essential facts of the transaction or conduct constituting the violation" and explaining that "it is not necessary for a potential plaintiff to have knowledge of every last detail of a transaction, or knowledge of its illegality" (internal quotations and citations omitted)); Blanton v. Anzalone, 760 F.2d 989, 992 (9th Cir. 1985) (holding that a plaintiff does not need to be advised by an attorney that the transaction was prohibited in order for the three year limitation period to begin running because "the statute of limitations is triggered by . . . knowledge of the transaction that constituted the alleged violation, not by . . . knowledge of the law."); Brock v. Nellis, 809 F.2d 753, 755 (11th Cir. 1987) (interpreting  § 1113(a)(2)(A) to "mean[] only that once [the plaintiff]

learns of the facts that support his allegation of illegality he has no more than three years in which to bring his suit.").

Following the more prevalent view that only knowledge of the essential facts is required to trigger the three year limitation period, identifying when the plaintiff has actual knowledge of the breach is a relatively straightforward inquiry.  The plaintiff will be deemed to have actual knowledge at the time that he or she becomes aware of the facts that constitute the breach (as opposed to a general awareness that something may be wrong or specific awareness of the legal cause of action). See Martin v. Consultants & Administrators, Inc., 966 F.2d at1086 (commenting that "somewhere between 'every last detail' and 'something was awry' lies the requisite knowledge of an ERISA violation");  Fink v. Nat'l Savings and Trust Co., 772 F.2d 951, 957 (C.A.D.C. 1985) (holding that "[t]he disclosure of a transaction that is not inherently a statutory breach of fiduciary duty cannot communicate the existence of the underlying breach."); St. Julian v. Trustees of the Agreement of Trust for Maritime Ass'n-I. L.A. Pension Plan, 5 F.Supp.2d 469, 472 (S.D. Tex. 1998)(stating that, for purpose of determining when ERISA action involving denial of benefits accrues, a person has actual knowledge of fiduciary's breach or violation when he is informed of allegedly improper denial of benefits); Starr v. JCI Data Processing, Inc., 757 F.Supp. 390, 395 (D.N.J. 1991)(holding that, in suit in which gravamen of complaint was that plan did not meet ERISA's minimum funding requirement, three-year limitations period based on claimant's actual knowledge began to run on date that plaintiff had complained to defendant that employee's accounts were not earning interest).

The Third and Fifth Circuits have adopted a more narrow interpretation of § 1113.  Those circuits have held that "'actual knowledge' requires a showing that plaintiffs knew not only of the events that occurred which constitute the breach or violation, but also that those events supported

a claim for breach of fiduciary duty or violation under ERISA." Int'l Union v. Murata Erie N. Am., Inc., 980 F.2d 889, 900 (3d Cir. 1992). See Gluck v. Unisys Corp., 960 F.2d 1168, 1178 (3d Cir. 1992); Maher v. Stracham Shipping Co., 68 F.3d 951, 954-55 (5th Cir. 1995). In Gluck v. Unisys Corp., the Third Circuit articulated a definition of actual knowledge:

> We hold that under *29 USC § 1113*(2) "actual knowledge of a breach or violation" requires that a plaintiff have actual knowledge of all material facts necessary to understand that some claim exists, which facts could include necessary opinions of experts, . . . knowledge of a transaction's harmful consequences, . . . or even actual harm . . . .

Gluck v. Unisys Corp., 960 F.2d at 1177. See Int'l Union v. Murata Erie N. Am., Inc, 980 F.2d at 900; Maher v. Stracham Shipping Co., 68 F.3d at 954. The Third Circuit further explained that:

> Actual knowledge of a breach or violation requires knowledge of all relevant facts at least sufficient to give the plaintiff knowledge that a fiduciary duty has been breached or ERISA provision violated. Gluck therefore requires a showing that plaintiffs actually knew not only of the events that occurred which constitute the breach or violation but also that those events supported a claim of breach of fiduciary duty or violation under ERISA.

Gluck v. Unisys Corp., 960 F.2d at 1177 (citations and quotations omitted). The Third Circuit noted, however, that it was not holding that "the statute of limitations can never run until a plaintiff first consults with a lawyer." Id. Rather, it concluded that more than knowledge of the essential facts of the transaction or conduct constituting the violation was required. See id. at 1178.

## 2. Six-Year Statute of Limitations.

Section 1113 provides an exception to the statute of limitations that says, "except that in the case of fraud or concealment, such action may be commenced not later than 6 years after the date of discovery of such breach or violation." 29 U.S.C. § 1113. There is disagreement among the Circuits as to whether the six-year exception encompasses fraud and concealment as separate actions or whether it only applies in cases of fraudulent concealment. See Larson v. Northrop, 21 F.3d 1164,

1173 n.15 (D.C. Cir. 1994) (discussing the different interpretations of § 1113's "fraud or concealment" provision).  The Tenth Circuit has not addressed this issue, and  ING represents that it has not located any cases from the United States District Court for the District of New Mexico addressing interpretation of § 1113.

The Second Circuit in Caputo v. Pfizer, 267 F.3d 181 (2d Cir. 2001), stated that the six-year statute of limitations for breach of fiduciary duty and ERISA claims is not limited to cases of "fraudulent concealment."  Id. at 189.  The Second Circuit viewed fraud and concealment as separate entities:

> [G]iving each term independent significance (as one must when terms are used in the disjunctive unless the context dictates otherwise, Reiter v. Sanatone Corp., 442 U.S. 330, 339 . . . (1979)), the 6-year statute of limitations should be applied to cases in which the fiduciary: (1) Breached its duty by making a known misrepresentation or omission of the material fact to induce the employee/beneficiary to act to his detriment; or (2) Engaged in acts to hinder the discovery of a breach of fiduciary duty. In re Unisys Corp., 242 F.3d at 513-16.

Id. at 190.  Thus, the Second Circuit held that § 1113's "fraud or concealment" provision applied in cases of fraud or fraudulent concealment.  See id.

For other courts, however, simply alleging that fraud has occurred, without more, is insufficient to fit an ERISA suit under the six-year statute of limitations.  These courts have held that fraud under ERISA's six-year statute of limitations provision requires that a defendant take affirmative steps to "hide" a breach of fiduciary duty or that the defendant "cover its tracks" with respect to any wrongdoing as a fiduciary.

The Third, the Seventh, and the District of Columbia Circuits all interpret the six-year statute of limitations as applying only in cases of fraudulent concealment.  In Radiology Center, S.C. v. Stifel, Nicolaus & Co., 919 F.2d 1216 (7th Cir. 1990), the court stated that, for purposes of determining

-10-

the applicable statute of limitations in a case of alleged fraud, § 1113 should be viewed as referring

to steps that the wrongdoing fiduciary takes to cover his tracks, rather than referring to the nature

of factual allegations supporting a claim for breach of fiduciary duty.  See id. at 1220.  In Radiology

Center, S.C. v. Stifel, Nicolaus & Co., the plaintiffs contended that, because the underlying conduct

giving rise to their ERISA claim was securities fraud, their case was one of "fraud or concealment"

within § 1113's meaning.  In response, the Seventh Circuit stated:

> The question of whether the phrase "in case of fraud or concealment" in § 1113
> should be construed as referring to the nature of the factual allegations supporting the
> claim for breach of fiduciary duty, as plaintiffs contend, or to steps taken by
> wrongdoing fiduciaries to cover their tracks, as defendants assert, is one that has
> divided courts. *Compare Diduck v. Kaszycki & Sons Contractors*, 874 F.2d 912, 919
> (2d Cir. 1989), *with Farrell v. Automobile Club*, 870 F.2d 1129, 1131 (6th Cir. 1989)
> *and Schaefer v. Arkansas Medical Soc'y*, 853 F.2d 1487, 1491 (8th Cir. 1988). We
> conclude that the better view is that the phrase refers to steps taken by the defendant
> to hide the fact of the breach rather than to the underlying nature of plaintiffs' claim.

Id. at 1220.  As the United States Court of Appeals for the Tenth Circuit stated in In re Unisys Corp.

Retiree Medical Benefit "ERISA" Litigation,

> The purpose of the 'fraud or concealment' provision [in § 1113] is to codify a portion
> of the common law for ERISA breach of fiduciary duty claims.  The issue raised by
> this provision is not simply whether the alleged breach involved some kind of fraud
> but rather whether the fiduciary took steps to hide its breach so that the statute should
> not begin to run until the breach is discovered.

242 F.3d 497, 502 (3rd Cir. 2001).  See Larson v. Northrup, 21 F.3d 1164, 1174 (D.C. Cir. 1994)

(commenting that, "[w]hile a fiduciary's mere silence could, in some circumstances, amount to fraud,

it would still fall short of the fraudulent concealment that courts have required for purposes of §

1113.").

## COMMON LAW FRAUD AND RULE 9(b)

The essential elements of fraud are well settled.  The person alleging fraud "must show a

material false representation, made with knowledge of its falsity or recklessly without knowledge as

to its truth or falsity, as a positive assertion, with the intention that it be acted upon by another, who

does act in reliance thereon, to his injury." Roberts v. Wells Fargo AG Credit Corp., 990 F.2d 1169,

1172 (10th Cir. 1993)(citing Varn v. Maloney, 516 P.2d 1328, 1332 (Okla. 1973)).  See Zell v.

Commissioner, 763 F.2d 1139, 1144 (10th Cir. 1985)(stating that to establish fraud, the [plaintiff]

must prove that the defendant possessed the requisite intent to defraud; the elements of fraud consists

of: (i) a false representation; (ii) in reference to a material fact; (iii) made with knowledge of its falsity;

(iv) with intent to deceive; (v) and with action taken in reliance upon the representation).

Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting

fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  These heightened pleading

requirements are intended to provide the defendant fair and adequate notice of the plaintiff's claim

and to protect the defendant from reputational damage that "improvident charges of wrongdoing"

may cause.  Farlow v. Peat, Marwick, Mitchell & Co., 956 F.2d 982, 986 (10th Cir. 1992). See

Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n, 176 F.3d 315, 322 (6th Cir.

1999).  The rule's purpose is also to allow the defendant to respond on an informed basis.  See id.

To survive a motion to dismiss, an allegation of fraud must "set forth the time, place, and

contents of the false representation, the identity of the party making the false statements and the

consequences thereof."  Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1252 (10th Cir.

1997). See Plastic Packaging Corp. v. Sun Chemical Corp., 136 F.Supp.2d 1201, 1203 (D. Kan.

2001)("[P]laintiff must set out the who, what, where, and when of the alleged fraud.").  If the plaintiff

cannot meet this burden, the court must dismiss the claim; a plaintiff cannot "base claims of fraud on

speculation and conclusory allegations." United States ex rel. Schwartz v. Coastal Healthcare Group

Inc., 2000 U.S. App. LEXIS 26914, *9 (10th Cir. 2000)(unpublished)(quoting United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 903 (5th Cir. 1998)).  On the other hand, rule 9(b) does not require specific knowledge regarding the defendant's state of mind.  See Fed. R. Civ. P. 9(b).

Although the Second Circuit does not limit application of the six-year limitation period to actions for fraudulent concealment, it still requires that a claim for fraud in the underlying breach meet the pleading requirements set forth in rule 9(b).  See Caputo v. Pfizer, Inc., 267 F.3d at 191.  Thus the court in  Caputo v. Pfizer, Inc. held that, to take advantage of ERISA's six-year statute of limitations for fraud or concealment, a plaintiff must, as rule 9(b) requires, plead fraud with particularity. See id.

## ANALYSIS

The Court will grant the rule 12(b)(6) motion.  The Court finds that Midgley had actual knowledge of the alleged breach of fiduciary duty in November or December of 1999 and thus, with respect to allegations of a nonfraudulent breach, § 1113's three-year limitation would bar his claim. With respect to the six-year exception provided by § 1113 in cases of fraud or concealment, the Court finds that Midgely's Complaint does not meet the pleading requirements for fraud or fraudulent concealment.  Therefore, the Court will dismiss the claim without prejudice and grant the plaintiff leave to amend his complaint, at which point the Court can determine if plaintiff's allegations warrant application of the six-year limitation period.

## I.    IT IS NOT NECESSARY TO CONVERT THIS MOTION TO DISMISS TO A MOTION  FOR SUMMARY JUDGMENT.

The only materials that ING submits with its motion to dismiss are a letter that Midgley handwrote to Aetna and a letter from ING responding to Midgley's letter.  These letters are central

to Midgley's claim, and Midgley does not argue otherwise.  Nor does he dispute their authenticity.

Midgley does not argue that the Court should convert this case to a motion for summary judgment.  He does not ask for discovery.  Nor does he argue that the Court should not consider these two letters.  Accordingly, it is not necessary for the Court to convert this motion to a motion for summary judgment.[3]

## II      UNLESS HE COMES WITHIN THE FRAUD EXCEPTION, MIDGLEY'S COMPLAINT IS TIME BARRED UNDER § 1113(2) BECAUSE HE HAD ACTUAL KNOWLEDGE OF THE PLAN TERMINATION AND MARKET VALUE ADJUSTMENT MORE THAN THREE YEARS BEFORE FILING SUIT.

Midgley contends that his claims fall within ERISA's three-year statute of limitations because he had not received "actual knowledge" of the alleged breach, as ERISA caselaw contemplates, to trigger the running of the three-year limitations period.  The caselaw addressing "actual knowledge," as contemplated in the ERISA statute of limitations, indicates that Midgley in November 1999 had knowledge of the essential facts that constituted the alleged breach and that such knowledge was reinforced to him one month later in December 1999.  See Letter from Aetna to Midgley (Dec. 13, 1999)(responding to Midgley's inquiry regarding the plan termination and market value adjustment).  Midgley's citation to caselaw defining actual knowledge is inapposite on this issue.

To refute ING's assertion that Midgley had received actual knowledge in 1999 outside the limitations period, Midgley cites to Becker v. Eastman Kodak, 120 F.3d 5, 8 (2d Cir. 1997), which

_____

[3] As an alternative, the Court could treat the motion as a motion for summary judgment and accept the exhibits as party admissions.  See Fed. R. Civ. P. 12(b ).  Tenth Circuit law suggests, however, that the Court would then need to give notice of the conversion before ruling on the motions for summary judgment.  See Brown v. Zavaras, 63 F.3d 967, 969 (10th Cir. 1995).  Because ING attached one of the letters as an exhibit to the moving papers, there is no surprise, and Midgley has not alleged surprise.  Indeed, Midgley has not objected to the letters or to the Court's consideration of them.

the Second Circuit referenced in Caputo v. Pfizer, 267 F.3d 181, 193 (2d Cir. 2001). Midgley asserts that, according to Becker v. Eastman Kodak, actual knowledge occurs when, upon receiving an inquiry from an employee, the fiduciary conveys correct and complete material information about his status and options. Midgley alleges that ING did not convey accurate information to him, but instead referred him to other companies and did not give a precise explanation regarding the creation of new market value adjustments or penalty.

Becker v. Eastman Kodak is not applicable to the standard of actual knowledge under the ERISA statute of limitations. The standard in Becker v. Eastman Kodak arose out of the court's attempt to define duties that the fiduciary owes to a plan beneficiary. In defining such duties, the Second Circuit noted that courts of appeals in other circuits have held that ERISA fiduciaries "must provide complete and accurate information in response to beneficiaries' questions about plan terms and/or benefits." Becker v. Eastman Kodak, 120 F.3d at 8.

Thus, it was in the context of defining a fiduciary's duties for purposes of determining whether a breach has occurred that the Second Circuit in Becker v. Eastman Kodak indicated that "correct and complete material information must be given regarding status and options [of a plan participant]." Becker v. Eastman Kodak, 120 F.3d at 8. Midgley's contention that complete and accurate information regarding status and options must be provided by a fiduciary before the statute of limitations is triggered is thus incorrect. Nowhere in the caselaw regarding ERISA's three-year statute of limitations is there a requirement that the fiduciary must convey such complete information for there to be actual knowledge and for the statute of limitations to be triggered.

In determining whether Midgley had actual knowledge, the Court need not decide which circuit's definition of "actual knowledge" is correct. Under either test, Midgley had actual knowledge

when he exchanged correspondence with Aetna.  Applying the first step of the <u>Ziegler v. Connecticut</u> <u>General Life Ins.</u> analysis, Midgley has indicated that the application of the market value adjustment to his account, and the failure to give advance notice of the plan termination, constitute the alleged breaches.  <u>See</u> Complaint ¶ 4, 5, and 6, at 2.  The application of the market value adjustment occurred in July 1999 when the plan terminated.  The breach for failure to give notice would have occurred sometime before the plan termination.  <u>See</u> Complaint ¶ 4 and 5, at 2.  The Court can therefore presume that the alleged breaches occurred before and in July of 1999.

Applying the second step of the analysis, Midgley's letter to Aetna indicates that he had actual knowledge of the facts constituting the alleged breaches as of November 16, 1999.  <u>See</u> Handwritten Letter from Midgley to Aetna.  Through this letter, Midgley makes inquiry into why the plan was terminated, and why and how the $8,163.64 deduction – the market value adjustment – was implemented.  Thus, Midgley had knowledge of the actual breach of duty upon which he sues as of November 16, 1999.  Aetna reaffirmed that knowledge one month later, in December of 1999, when Midgley received a letter from Aetna in response to his inquiries.  <u>See</u> Letter from Aetna to Midgley.

Midgley's November 1999 letter establishes that he had actual knowledge of: (i) the market value adjustment; (ii) the plan termination; and (iii) the failure to give advance notice.  The December 1999 letter informed Midgley of the specifics regarding the deduction and plan termination, and provides further support that he had such knowledge.  If the Court were to adopt the majority view that actual knowledge under § 1113 is defined as knowledge of the core facts constituting the breach, the Court finds Midgley's argument that he did not receive actual knowledge regarding the plan termination and the market value adjustment in November or December 1999 unavailing.  The uncontroverted evidence supports the fact that in 1999 Midgley had knowledge of the essential facts

constituting the alleged breach as the ERISA caselaw defines such breaches.

Even if the Court were to adopt the minority definition of "actual knowledge," the Court would still conclude that he had actual knowledge outside of the three-year statute of limitations. The circuit courts adopting the minority definition faced a situation where the plaintiffs knew of the event that constituted the ERISA violation, but did not know or did not understand the consequences of the event. See Gluck v. Unisys Corp., 960 F.2d at 1178-79 (holding that although employees knew of changes to their benefits plan, they did not have actual knowledge that the change constituted a violation); Int'l Union v. Murata Erie N. Am., Inc, 980 F.2d at 901 (explaining that plaintiffs knew the contents of an amendment to their plan, but did not have actual knowledge that the amendment created a potential breach of fiduciary duty); Maher v. Stracham Shipping Co., 68 F.3d at 955 (explaining that plaintiffs' unease with annuity company did not show "that appellants had actual knowledge of the facts necessary to understand that some claim existed, knowledge of the harmful effect the purchase of [the annuity] would have, or knowledge of any actual harm . . . "). Unlike the plaintiffs in those cases, Midgley had knowledge that he was harmed and he understood that some claim existed.

Midgley's letter to Aetna demonstrates that he understood the effect of the plan termination. In his letter, Midgley states that he contacted the Department of Labor for instructions regarding the plan. See Letter from Midgley to Aetna, at 1. He also indicates that he is aware that the plan termination harmed him. He writes:

> Why was the plan terminated in July 1998 as I was told by Allan Wilson, an Aetna employee. [sic] This action resulted in a new vesting period of 6 years - knowing full well that I could not become vested in a new plan, because the company had already sold to IMC Global. Had I transferred my 401K funds at that time I would have received the full amount" this I was told by Donna Kennedy, a personnel empolyee or Rayrock Co. Why was I not informed at this time?

-17-

See <u>id.</u>  Midgley indicates he was "forced out of the plan."  <u>See id.</u> at 2.  He also refers to the situation as his "case."  <u>See id.</u>  Midgley's letter demonstrates that he knew, not only the essential facts constituting the alleged breach, but also that he had been harmed and some claim existed.

Because Midgley had actual knowledge almost four years before filing his Complaint on November 28, 2004, the three-year statute of limitations bars him from recovery.   Unless Midgley can come within the fraud exception , the Court will dismiss the Complaint pursuant to rule 12(b)(6).

## III.   THE COURT CANNOT DETERMINE WHETHER THE SIX-YEAR LIMITATION PERIOD APPLIES BECAUSE MIDGLEY'S COMPLAINT DOES NOT PLEAD FRAUD OR FRAUDULENT CONCEALMENT WITH SUFFICIENT PARTICULARITY.

Midgley attempts to avoid the three-year limitation period and thus save his Complaint from dismissal by alleging fraud and by arguing that he is entitled to fit within ERISA's  six year statute of limitations period for "fraud or concealment."   Midgley relies on the Second Circuit's position articulated in <u>Caputo v. Pfizer</u>, 267 F.3d 181, that the six-year statute of limitations for breach of fiduciary duty is not limited to cases of "fraudulent concealment," but instead encompasses fraud and concealment as separate causes of action. <u>See id</u> at 190.

ING contends that Midgley's allegations of fraud do not support a claim for fraudulent concealment as contemplated by the ERISA statute of limitations.  Relying on <u>Radiololgy Center, S.C. v. Stifel, Nicolaus & Co.</u>, 919 F.2d 1216 (7th Cir. 1990), and <u>In re Unisys Corp. Retiree Med. Benefit</u>, 242 F.3d 497 (3d Cir. 2001), ING argues that the three-year limitation can only be circumvented by actions for fraudulent concealment and not common law fraud. ING argues that Midgley's allegations of fraud in paragraph five of the Complaint are ones that, at best, support a claim for breach of fiduciary duty and do not show that ING took affirmative steps to "hide" a breach of fiduciary duty or that ING "covered its tracks" with respect to any wrongdoing as a fiduciary. <u>See,</u>

e.g., Complaint ¶ 5, at 2.  As such, ING maintains that Midgley does not present an action constituting "fraud or concealment" under 29 U.S.C. § 1113 and that he therefore cannot take advantage of the six-year statute of limitations provision.

The Court need not decide the legal issue that divides the circuits because the Court finds that Midgley's Complaint does not meet the pleading requirements for either fraud or fraudulent concealment.  If the Court were to proceed under the view that § 1113 encompasses common law fraud claims, Midgley's complaint does not meet rule 9(b)'s pleading standard for such claims. Midgley's Complaint merely speculates that fraud has occurred and does not "set forth the time, place, and contents of the false representation, the identity of the party making false statements and the consequences thereof." Schwartz v. Celestial Seasonings, Inc., 956 F.2d at 986.  See, e.g., Complaint ¶ 5, at 2 ("As a result of the termination of the 401k plan, without advance notice to the Plaintiff, which acts in furtherance thereof constitute fraud, and breach of contract in the underlying benefit plan, Defendants wrongfully charged the plaintiff an offset . . . .").  Thus, Midgely's complaint does not comply with rule 9(b)'s particularity requirements.

Should the Court adopt the position that § 1113's "fraud or concealment" provision applies only to claims of fraudulent concealment, Midgley's complaint still does not allege facts sufficient to constitute such a claim.  Under this reading of § 1113, Midgley would be required to set forth specific facts demonstrating that ING took affirmative steps to "hide" or "cover its tracks" to fraudulently conceal a breach of fiduciary duty; simply demonstrating that the underlying breach involved fraud would not be sufficient.  See Kurz v. Philidelphia Elec. Co., 96 F.3d 1544, 1552 (3d Cir. 1996) (stating that "the relevant question is . . . not whether the complaint 'sounds in concealment,' but rather whether there is evidence that the defendant took affirmative steps to hide its breach of

-19-

fiduciary duty."). The Complaint does not show that ING took affirmative steps to "hide" a breach of fiduciary duty or that ING "covered its tracks" with respect to any wrongdoing as a fiduciary. <u>See e.g.</u>, Complaint ¶ 5, at 2 ("As a result of the termination of the 401K plan, without advance notice to the Plaintiff, which acts in furtherance thereof constitute fraud, breach of contract in the underlying benefit plan, ING's wrongfully charged Plaintiff an offset. . ."). Thus, the Complaint does not properly plead fraudulent concealment.

Because the Court finds that the Complaint does not allege fraud with particularity, the Court will grant the motion to dismiss. The Court is unable to determine at this point whether Midgley will be able to amend his Complaint to fairly characterize his claims as fraud or fraudulent concealment so as to invoke the six year exception provided for in § 1113. Therefore, the Court will dismiss the complaint without prejudice.

**IT IS ORDERED** that Defendant ING's motion to dismiss is granted, and the Complaint is dismissed without prejudice. If the Plaintiff wishes to proceed with his case, he must file an amended complaint that complies with rule 9(b) by November 29, 2005.

_____
UNITED STATES DISTRICT JUDGE

_Counsel_:

Jeffrey B. Diamond
Bill E. Dials
Jeff Diamond Law Firm
Carlsbad, New Mexico

    _Attorneys for the Plaintiff_

Leonard J. Piazza
Jeffrey B. Diamond
Anita X. Tellez
Sandenaw & Piazza, P.C.
Las Cruces, New Mexico

   *Attorneys for Defendant Aetna Financial Services*